Mr. Justice McLEAN
dissented.
In my judgment, this case is not within the decision of the case of Stoddard v. Chambers. In that case, the claim was confirmed “ to the said Mordecai Bell or his legal representatives, according to the survey.” But in this case the claim was confirmed “according to the concession.” Now, until a concession is' located, it can give no claim to any specific tract of land, and consequently cannot come within the reservation of any of the acts of Congress. And the main question in the case was, whether there was such a survey or designation of this concession as to bring it within the above acts.
The first Board of Commissioners, who acted on this claim in 1806 and in 1810, rejected it. As appears from their rec.ord, the concession only was before the board when they finally acted upon the subject. But a new and more favorable board was constituted in 1832, and it appears from their record, that, on the 9th of October in that year, “the sons of Yasquez, Benito, Antoine, Hypolite, Joseph, and Pierre Vasquez, claiming 800 arpens each under a concession dated 17th of February, 1800, was presented. Also a plat of survey dated 7th February, 1806, of 800 arpens.” “Pascal Cerré, being duly sworn, *342 saith, that the signature to the concession is in the handwriting of Delassus; that the signatures to the survey are in the handwritings of Mackay and Antoine Soulard.”
On the 2d of November, 1833, the board again met, and their record states that “the sons of Yasquez, each claiming 800 arpens of land under a concession from Charles Dehault Delassus ”; and that “ they can see no cause for entertaining the idea that the said concession was not issued at the time it bears date, as intimated in the minutes of the former commissioners.” And they “are unanimously of opinion, that this claim ought to be confirmed to the said Benito, Antoine, Hypolite, Joseph, and Pierre Yasquez, or their legal representatives, according to the concession.” I
On the 11th of February, 1806, Benito conveyed to Rudolph Tillier his “ right, title, and interest, claim and pretension and demand, in and to a certain tract of land not yet located or surveyed.” And Tillier says, “I do hereby assign, transfer, sell, and set over, unto Clement B. Penrose, all my right, title, interest, property, claim, and demand of, in, and to a certain concession purchased .of Benito Yasquez and assigned to me on the 11th of February, 1806, and plat of surrey made for me, and dated 27th February, 1806, for value received.” This assignment bears no date, but it was acknowledged the 31st of October, 1818.
Frederic R. Conwajq a witness for plaintiff, testified that he was one of the late Board of Commissioners that confirmed this claim; that the said original survey of Mackay, given in evidence by plaintiff, was the plat that Tillier claimed by, as he understood it; and that no other. survey was exhibited to the commissioners, so far as he remembered, connected with this claim ; that the survey .was not noted in the tabular statement contained in the proceedings of said board, which omission, he thought, was by the mistake of the clerk.
The following certificates of surveys were given in evidence, one by the plaintiff and the other by the defendant: —• “ I do certify that the above plat represents 800 arpens of land, French measure, situated in the district of St. Louis, Louisiana Territory, and surveyed by me at the request of the proprietor, who claims the same by virtue of a Spanish grant. Given under my hand at St. Louis, the 27th day of February, 1806. Signed, James Mackay. Received for record, St. Louis, the 27th of February, 1806. Signed, Antoine Soulard, Surveyor-General of Louisiana.”
The other certificate is in the same words. These plats and certificates were recorded by the recorder of land titles on the *343 same page. It was proved that one of these surveys covered the land in controversy, and that the other did not. The name of Tillier was written on one ,of the plats, but by whom, at what time, and under what circumstances, does not appear. From the loose manner in which the recorder’s office and the papers connected with it seem to have been kept, and the ready access to them by all parties, it would be a dangerous principle of evidence, to consider the simple indorsement of a name on a plat as identifying the owner of the land. And especially where the surveyor nowhere states for' whom the survey was made.
The court instructed the jury, “ that the land included in the survey given in evidence, and which was made for Rudolph Tillier, assignee of Benito Yasquez, on the 27th of February, 1806, by James Mackay, and which was officially resurveyed in conformity to the act of Congress of the 4th of July, 1836, and which resurvey is numbered 3,061, and was approved by Joseph C. Brown on the 29th of March, 1842, was reserved from location and sale at the time McNight and Brady’s location, under a New Madrid claim, was made, and therefore the location under said claim is invalid, as against the title of said Yasquez,” &c.
Among the instructions prayed for by the defendant, which the court refused to give, was the following: — 5. “ If the jury find from the evidence that Rudolph Tillier, under whom the plaintiff in this case claims the land in question, filed his claim with the recorder of land titles, and, as a part of the evidence of his claim, filed two plats of the land claimed, one of which plats would embrace the land now in the defendant’s possession, and the other would not embrace that land, then there is no reservation of the land in the defendant’s possession from sale, which would prevent the location of the land -in question, under the certificate in favor of John Brooks or his legal representatives.”
The deposition of Conway, one of the commissioners who confirmed this concession, was introduced to supply a defect in the record. He states that the original survey of Mackay, which Tillier claimed by, was before the commissioners, and no other plat, so far as. he can remember. Now if this evidence was admissible, it was for the consideration of the jury. It was intended to correct the record, and show that the survey was acted upon by the commissioners, although no entry was made of it by the clerk in the tabular statement. It may well be doubted whether parol evidence was admissible for this purpose, especially after the lapse of some fourteen years. In a *344 matter involving title to real estate, parol evidence cannot be heard to correct the record which the commissioners were required to keep, of their proceedings.
As the evidence was heard, and does not appear to have been overruled or withdrawn from the jury, it was their province to act upon it. But by the instruction given, there was nothing left for the jury to decide. They were instructed that the claim of the plaintiff was reserved from location and sale when the .New Madrid location was made, and consequently the latter iwas void. This ruled the whole case.
If the statement of Conway were not admissible, there, was no evidence to show that any survey was before the commissioners at the time they confirmed the concession. And it is certain that no entry was made upon their record to show a sanction of any survey. It does appear that a survey of the concession was before the commissioners who rejected the claim in 1806. ' And it also appears that on the 9th of October, 1832, “a plat of survey dated 7th February, 1806, of 800 arpens, was before the new commissioners. But on the 2d of November, 1833,when the concession was confirmed, no survey appears to have been before them, and they refer to none. .
If the two surveys made by Mackay of 800 arpens each, “ for the proprietor,” were admitted to have been made at the instance of Tillier, it leaves the location of the concession uncertain. Both surveys were executed on the same day, and were recorded on the ■ same page. Under Tillier’s right, he could survey only 800 arpens; and if he surveyed two tracts each of that quantity it was a fraud upon the public. Under the acts of Congress no tract of land was reserved as a Spanish claim, which was not. surveyed or, so specifically designated as to show with reasonable certainty its boundaries. There is noth-, ing on the record or in the parol proof to show which, of the plats,'if either, was made at the instance of Tillier. Both surveys were made “for the proprietor,” and as they bear the same date, it may be presumed they were made for the same person. But whether this be so or not, they present a state of uncertainty which is fatal to the Spanish claim. The mere name of Tillier, on one of the plats, without explanation, is no proof of its identity. .An entry on the record to identify the survey would have been sufficient. In the absence of such evidence, the survey made or approved by Joseph C. Brown in 1842 does not supply the defect. He must have acted arbitrarily, or from circumstances which existed at the time he acted. There was nothing to guide him as to the true survey at the time thé'New Madrid location was .made. And that was the *345 period of time to which the facts must apply, and the reservation of the Spanish claim be shown to have been made. The two surveys then existed and wére on the record, and if neither was specially designated as Tillier’s claim, there was no location of it within the reservation act. He could not claim both surveys, and as there was nothing on record to guide the New Madrid claimant in his location, he cannot be chargeable with notice.
Under these circumstances, I think the court erred in its instruction to the jury, that the Spanish claim was reserved from sale, and that the New Madrid location was void. I think, for this error, the judgment should be reversed.

Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Missouri, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.